(35 South. 484.)

No. 14,187.

## GOVAN v. NEW ORLEANS & C. R. CO.*

(June 22, 1903.)

**INJURY TO EMPLOYÉ—CONTRIBUTORY NEGLIGENCE.**

1. Well aware of the situation of iron posts located near the electric car track, and to which were attached the wires supporting the trolley, and required to keep, and keeping, notice posted in his car giving warning to keep heads, arms and body inside the car, and otherwise warned by his employers of the danger incident to his employment, and no duty being required of him calling for such act on his part, a conductor, nevertheless, thrust his head and neck out of one of the windows of the car and was struck by one of the posts distant eleven inches from the outside of the window of the passing car. The car tracks and posts

*Rehearing denied January 6, 1904.

had been located pursuant to directions of the City Engineer who had authority in the matter. *Held*—No recovery for damages legally possible.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Widow Henry Govan against the New Orleans & Carrollton Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Henry Chiapella and William Joseph Formento, for appellant. Dart & Kernan, for appellee.

BLANCHARD, J. The plaintiff is the widow of Henry Govan, whose death, while in the service of defendant company, is the occasion of this suit.

She sues in her own behalf and that of her minor child, for whom she is tutrix.

She claims $10,000.00 damages for the loss of husband and father, and another $10,000.00 on account of the pain and agony it is alleged he suffered from his injuries preceding his death.

The defense is denial of negligence on part of the company and the averment that the death of Govan was due to his own negligence and carelessness.

The court below sustained this defense and plaintiff appeals.

The salient facts of the case as gathered from the record are:—

The dead man was conductor on Car No. 58 of the Canal and Claiborne streets line of electric cars in the City of New Orleans.

He had been conductor on that particular car three months, and had been, all told, in the service of the Company as conductor on its cars for three years. His record of service was good. He was about 40 years of age.

Claiborne Street runs at right angles with Canal Street and a car coming out of Claiborne into Canal turns towards the river, which is distant about a mile from where the two streets connect.

The tracks of the railway are laid on the neutral ground in the center of Canal Street, with the roadway of the street on either side.

The track on the upper side of the neutral ground is the one used by the cars going out.

of Claiborne Street and up Canal Street towards the river. Near the river, or at the head of Canal Street, a half circle is described and the cars go back down Canal Street to Claiborne Street on the track located on the lower side of the neutral ground.

A line of iron posts extended, at the time of the accident, from Claiborne Street along Canal, and to these posts were attached the wires which supported the trolleys over the tracks.

These posts were placed at the edge of the neutral ground, just as far away from the outside rail of the tracks as it was possible to place them without putting them into the roadway of the street.

They were so placed under the direction of the City Engineer, who, by authority of the City Council, supervised the laying of the tracks of the railway under the franchise grant made to the Company by the City.

These posts had been standing in that position for five years prior to the accident, or two years before Govan entered the service of the Company.

So, that he had, as conductor of cars, run along Canal Street, with the posts thus placed, a period of three years prior to his death.

Each car of the line passed along Canal Street twenty-eight times a day. Multiplying the number of days going to make up three years by 28, and we have over thirty thousand as the number of times Govan had passed along those posts, if he ran his car each day of the three years.

But allowing for sickness and days off, it is safe to say he had passed along by them something like twenty-five thousand times.

He, thus, had knowledge of the exact location of the posts with reference to proximity to the car tracks and proximity to the passing cars.

In the cars on the line in question was kept posted a placard headed "Warning," the top line of which read:—"Keep your head, arms and body inside of the car."

And it is shown that the higher officials of the road always warned conductors and motorneers of the dangers incident to their positions.

About 5:30 p. m. on June 26, 1899, Govan's car was going up Canal Street. When near the head of the Street, with the car going at a good rate of speed, for some reason not shown with certainty, Govan, standing at the second window from the front of the car, on the up-town side of Canal Street, thrust his head and neck, and evidently the upper part of his body, out of the window.

While in this position the left side of his head came in contact with one of the iron posts heretofore described, with the result that his skull was fractured by the blow. He lingered a few days and died.

The blow rendered him immediately unconscious and he hung suspended, with half his body out of the car window, his head and hands down.

The motorneer, hearing the "thud" of the blow, looked around, realized the situation, applied his brakes and brought the car to a speedy stop.

There were no passengers in the car at the time. The motorneer, with the assistance of others, lifted the unconscious conductor from the window and laid him within the car.

The distance from the center line of the car to the post was five feet.

The distance from the outside of the car at the window line to the nearest point of the post which did the damage was eleven inches.

*Ruling*— In thus projecting his head, neck and upper party of body out of the window, in spite of the warnings given and in spite of his knowledge of the location of the posts in the matter of their proximity to the passing cars, the conductor was guilty of that degree of heedlessness and negligence which, under the well established rule of jurisprudence, bars his recovery.

The railway company laid its tracks and put the posts supporting its trolley wires where directed to do so by the City's engineer, who had a controlling voice in the matter.

But if the Company were at fault, and the tracks and the posts might have been laid and placed so as to have allowed of a greater space between passing cars and the posts, the conductor had such knowledge of the situation, was so well aware of the danger attendant upon putting his head out of the window, that his act in doing so must be held to have been gross carelessness and the proximate cause of his injuries and death.

The Company required of him no duty which called for such act on his part. His

death by collision with the post was the result of his own fault.

So found the trial judge and we cannot but approve his finding.

Judgment affirmed.